**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

GREGORY JONES,             §
                                     §
          *Plaintiff,*          §
                                       §
*versus*                         §          CIVIL ACTION NO. H-07-1139
                                       §
MICHAEL J. ASTRUE, Commissioner    §
of the Social Security Administration,       §
                                       §
          *Defendant.*        §

**MEMORANDUM AND ORDER**

Pending before the Court are Plaintiff Gregory Jones ("Jones") and Defendant Michael J. Astrue's, Commissioner of the Social Security Administration (the "Commissioner"), cross-motions for summary judgment. Jones appeals the determination of an Administrative Law Judge ("the ALJ") that he is not entitled to receive Title II disability insurance benefits. *See* 42 U.S.C. §§ 416(I), 423. Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, it is ordered that Jones' Motion for Summary Judgment (Docket Entry No. 11) is denied, the Commissioner's Motion for Summary Judgment (Docket Entry No. 12) is granted, and the Commissioner's decision denying disability income benefits is affirmed.

**I.**     *Background*

On October 23, 2003, Jones filed an application for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability beginning on May 1, 2002, as a result of back disorders (disco genic and degenerative) and affective mood disorders. (R. 23). After being denied benefits initially and on reconsideration, on May 5, 2004, Jones requested an administrative hearing before an ALL to review the decision. (R. 25-28, 32-34, 36).

A hearing was held on April 27, 2005, in Houston, Texas, at which time ALL John Jarrett began hearing testimony from Jones, but, because the records were thought to be inconsistent, the hearing was suspended for additional medical evidence to be obtained.  (R. 277).  A supplemental hearing was held on March 23, 2006, in Houston, Texas, wherein ALJ Helen Strong heard testimony from Jones and Patricia Cowen ("Cowen"), a vocational expert ("VE").  (R. 290-322).

In a decision dated June 9, 2006, the ALJ denied Jones' application for benefits.  (R. 14-20).  On June 20, 2006, Jones requested review of the ALJ's decision by the Appeals Council of the SSA's Office of Hearings and Appeals.  (R. 9, 11).  The Appeals Council, on September 29, 2006, denied Jones' request to review the ALJ's determination.  (R. 4-6 ).  This rendered the ALJ's opinion the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Jones filed this case on February 1, 2007, seeking judicial review of the Commissioner's denial of his claim for benefits.  *See* Docket Entry No. 1.

**II.**  *Analysis*

    **A.**  *Statutory Bases for Benefits*

Social Security disability insurance benefits are authorized by Title II of the Act and are funded by Social Security taxes.  *See* Social Security Administration, Social Security Handbook, § 2100 (14th ed. 2001).  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled*, regardless of indigence.  A claimant for disability insurance can collect benefits for up to twelve months of disability prior to the filing of an application.  *See* 20 C.F.R. §§ 404.131, 404.315; *Ortego v. Weinberger*, 516 F.2d 1005, 1007 n.1 (5th Cir. 1975); *see also Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997).  For purposes of Title II disability benefits, Jones has acquired sufficient

quarters of coverage to remain insured through September 30, 2006.  (R. 14 ).  Consequently, to be eligible for disability benefits, Jones must prove that he was disabled prior to that date.

Applicants seeking benefits under this statutory provision must prove "disability" within the meaning of the Act.  *See* 42 U.S.C. § 423(d); 20 C.F.R. § 404.1505(a).  Under Title II, disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

**B.**     *Standard of Review*

**1.**     *Summary Judgment*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case.  If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case.  *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991).  When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party and deny the motion if there is some evidence to support the nonmoving party's position.  *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000).  If there are no issues of material fact, the court shall review any questions of law *de novo*.  *See Merritt-Campbell,*

3

*Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

### 2.    *Administrative Determination*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence.  *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Masterson*, 309 F.3d at 272; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present."  *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for

that of the Commissioner.  *See Masterson*, 309 F.3d at 272.  In short, "[c]onflicts in the evidence are

for the Commissioner and not the courts to resolve.  *Id*.

      **C.**    ***ALJ's Determination***

An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is

capable of performing "substantial gainful activity," or is, in fact, disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.  *See* 20 C.F.R. § 404.1520(b).

2. An individual who does not have a "severe impairment" will not be found to be disabled.  *See* 20 C.F.R. § 404.1520(c).

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.  *See* 20 C.F.R. § 404.1520(d).

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.  *See* 20 C.F.R. § 404.1520(e).

5. If an individual's impairment precludes performance of his past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed.  *See* 20 C.F.R. § 404.1520(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *accord Boyd*, 239 F.3d at 704-05.  The claimant

has the burden to prove disability under the first four steps.  *See Myers*, 238 F.3d at 619.  If the

claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show

that other substantial gainful employment is available in the national economy, which the claimant

is capable of performing.  *See Masterson*, 309 F.3d at 272; *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).  If the Commissioner is able to verify that other

work exists in significant numbers in the national economy that the claimant can perform in spite of

his existing impairments, the burden shifts back to the claimant to prove that he cannot, in fact, perform the alternate work suggested.  *See Boyd*, 239 F.3d at 705.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *See id*.

The mere presence of an impairment does not necessarily establish a disability.  *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).  An individual claiming disability benefits under the Act has the burden to prove that he suffers from a disability as defined by the Act.  *See Newton*, 209 F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  A claimant is deemed disabled under the Act only if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209 F.3d at 452; *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); *Selders*, 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit.  *See Newton*, 209 F.3d at 452-53; *see also* 20 C.F.R. § 404.1572(a)-(b).

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also* 42 U.S.C. § 423(d)(3).  "[A]n individual is 'under a disability, only if the impairments are of such severity that he is not only unable to do his previous work but cannot,

6

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'"  *Greenspan*, 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)).  This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if he applied.  *See Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. §§ 404.1520(b) and 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: disorders of the back and affective/mood disorder (20 C.F.R. § 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work.  He can lift/carry 10 pounds occasionally and less than 10 pounds frequently.  He can stand/walk for at least 2 hours in an 8-hour workday, and he can sit for about a total of 6 hours in an 8-hour workday.  He is limited to pushing/pulling a maximum of 10 pounds.  He can occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds.  He can occasionally perform work that requires kneeling, crouching, crawling, or stooping, but never kneeling. Mentally, the claimant retains the functional capacity to perform simple tasks with no complex instructions.  Functionally, the claimant has moderate restrictions in his ability to perform activities of daily living, moderate difficulties in maintaining social functioning, mild restrictions in concentration, persistence, and pace, with no repeated episodes of decompensation of extended duration.

6.      The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

(R. 16-19).  As to the fifth step, the ALJ concluded:

7.      The claimant was born on February 7, 1958 and was 44 years old on the alleged disability onset date, which is defined as a younger individual 45-49 (20 C.F.R. § 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9.      The claimant has acquired work skills from past relevant work (20 C.F.R. § 404.1568).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. §§ 404.1560(c), 404.1566 and 404.1568(d)).

11.     The claimant has not been under a "disability," as defined in the Social Security Act, from May 1, 2002 through the date of this decision (20 C.F.R. § 404.1520(g)).

(R. 19-20).

This court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215; *Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452; *Greenspan*, 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3).  To determine whether the decision to deny Jones' claim for disability benefits is supported by substantial evidence, the court weighs the following four factors:  (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the plaintiff's age, educational background,

and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). Any conflicts in the evidence are to be resolved by the ALJ and not the court. *See Newton*, 209 F.3d at 452; *Brown*, 192 F.3d at 496; *Martinez*, 64 F.3d at 174; *Selders*, 914 F.2d at 617.

      **D.**    *__Issues Presented__*

Jones claims that the ALJ's decision contains an error of law, and is unsupported by substantial evidence. *See* Docket Entry No. 11. Specifically, Jones claims that the ALJ erred in finding that Jones' condition does not meet or equal the criteria of any listing. *See* Docket Entry No. 11. The Commissioner disagrees with Jones' contentions, maintaining that the ALJ's decision is supported by substantial evidence. *See* Docket Entry No. 13.

      **E**.    *__Review of the ALJ's Decision__*

        **1.**    *__Objective Medical Evidence and Opinions of Physicians__*

When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, he is presumed to be disabled and qualifies for benefits without further inquiry. *See id.* at 532; *see also* 20 C.F.R. § 404.1520(d). When a claimant has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *see Zebley*, 493 U.S. at 536 n.16; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The relevant regulations similarly provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Loza*, 219 F.3d at 393.  The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment.  *See Zebley*, 493 U.S. at 531.

The claimant has the burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment.  *See id.* at 530-31; *Selders*, 914 F.2d at 619.  The listings describe a variety of physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  *See Zebley*, 493 U.S. at 529-30.  Individual impairments are defined in terms of several specific medical signs, symptoms, or laboratory test results.  *See id.* at 530.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet *all* of the specified medical criteria.  *See id.*  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify.  *See id.*

For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.  *See id.* at 531 (citing 20 C.F.R. § 416.926(a)).  A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in severity and duration to the listed findings.  *See* 20 C.F.R. § 404.1526(a).  The applicable regulation further provides:

10

(1)(i)   If you have an impairment that is described in the Listing of Impairments in Appendix 1 of Subpart P of this chapter, but—

(A)   You do not exhibit one or more of the medical findings specified in the particular listing, or

(B)   You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;

(ii)   We will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance.

20 C.F.R. § 404.1526(a).   Nonetheless, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. Ultimately, the question of equivalence is an issue reserved for the Commissioner. *See Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993)

A review of the medical records submitted in connection with Jones' administrative hearing reveals that Jones' active problems are depression,[1] hypertension,[2] lumbar disc disease,[3] and sleep apnea.[4]   (R. 224, 226, 244).   Jones' medical records also reveal a history of high blood pressure, which has been controlled with medication.   (R. 151).   Jones claims that he had back pain for many

---

[1]   "Depression" a mental state of depressed mood characterized by feelings of sadness, despair, and discouragement.   *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 477 (29th ed. 2000).

[2]   "Hypertension" is high arterial blood pressure.   *See* DORLAND'S, *supra*, at 858.

[3]   "Lumbar" is the parts of the sides of the back between the thorax and the pelvis.   *See* DORLAND'S, *supra*, at 1029.

[4]   "Sleep Apnea" is transient periods of cessation of breathing during sleep.   *See* DORLAND'S, *supra*, at 114.

years, and that in 1995, he had a discectomy,[5] on his lower back.  (R. 302, 303).  Jones alleges that, in 2002, he stopped working after he injured his back while helping someone move.  (R. 302, 303).

On August 27, 2002, Jones visited Kelsey-Seybold Clinic ("Clinic"), complaining of lower back pain.  (R. 239).  Five images of the lumbar spine were reviewed by Scott Meshberger, M.D. ("Dr. Meshberger"), who reported that the examination was "unremarkable" and indicated no specific conditions or problems.  (R. 239).  Additionally, on October 15, 2002, Michael Vennix, M.D. ("Dr. Vennix") opined, based on an electromyography ("EKG"), that all motor units in the muscles examined were found to be normal in their morphology, amplitude, durations and recruitment.  (R. 231).  Several months later, on December 15, 2002, the Clinic performed an electromyography[6] and found no electrodiagnostic evidence of either an acute right or left L3-S1 radiculopathy[7] or of a generalized peripheral neuropathy.[8]  (R. 231).

Almost a year later, on October 6, 2003, the Clinic again examined Jones using imaging consultation (MRI Lumbar Spine with/without contrast) and determined that there were L5/S1 central and left paracentral[9] broad-based disc protrusions with annular[10] tears.  (R. 218).  Moderate narrowing

---

[5]  "Discectomy" is an excision of an intervertebral disk.  *See* DORLAND'S, *supra*, at 526.

[6]  "Electromyography" (EKG) is an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation; performed using any of a variety of surface electrodes, needle electrodes, and devices for amplifying, transmitting, and recording the signals.  *See* DORLAND'S, *supra,* at 577.

[7]  "Radiculopathy" is a disease of the nerve roots.  *See* DORLAND'S, *supra*, at 1511.

[8]  "Neuropathy" is a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions.  *See* DORLAND'S, *supra,* at 1212.

[9]  "Paracentral" means near the center.  *See* DORLAND'S, *supra*, at 1314.

[10]  "Annular" means shaped like a ring.  *See* DORLAND'S, *supra*, at 92.

of the left as well as severe narrowing of the inferior left neural[11] foramen[12] also were noted.  (R. 218).

Additionally, the report indicated that Jones suffered from mild, degenerative[13] disease at multiple

levels, a right renal[14] lesion and hemangiomas[15] of the lumbar spine.  (R. 218).  Later that month, on

October 24, 2003, the Clinic prescribed Jones Vicodin for his pain.  (R. 216).

On November 20, 2003, during a consultation at the Clinic, Michael Heggeness, M.D. ("Dr.

Heggeness") observed that Jones was able to extend his leg easily to 90 degrees while in a seated

position. (R. 212). Dr. Heggeness noted that there was a 3-inch scar on Jones' back that, presumably,

resulted from a midline incision made during his 1995 L5-S1 laminectomy[16] for "disk bulge."

(R. 212).   Dr. Heggeness opined that he was "not convinced" that there was any nerve root

compression based on the MRI[17] he had reviewed, which had been done without I.V. contrast.[18]

(R. 212).  He further noted that he was not optimistic that there were any surgical options available

to Jones, but suggested that Jones return to the MRI facility for a contrast study.  (R. 212).

---

[11] "Neural" pertains to a nerve or to the nerves and is situated in the region of the spinal axis, as the neural arch.  *See* DORLAND'S, *supra,* at 1206.

[12] "Foramen" is a natural opening or passage and is a general term for such passage, especially one into or through the bone.  *See* DORLAND'S, *supra*, at 696.

[13] "Degenerative" pertains to deterioration; change from a higher to a lower form especially the change of tissue to a lower or less functionally active form.  *See* DORLAND'S, *supra*, at 465, 466.

[14] "Renal" pertains to the kidney.  *See* DORLAND'S, *supra*, at 1556.

[15] "Hemangioma" is an extremely common benign tumor, occurring most commonly in infancy and childhood, made up of newly formed blood vessels, and resulting from malformation of angioblastic tissue of fetal life.  *See* DORLAND'S, *supra*, at 795.

[16] "Laminectomy" is an excision of the posterior arch of a vertebra.  *See* DORLAND'S, *supra*, at 960.

[17] "MRI" is the abbreviation for magnetic resonance imaging.  *See* DORLAND'S, *supra,* at 1136.

[18] "Contrast" is the degree to which light and dark areas of an image differ in brightness or in optical density. *See* DORLAND'S, *supra*, at 398.

On December 19, 2003, Jones was evaluated by clinical psychologist Jim C. Whitley, Ed. D. ("Dr. Whitley").  (R. 146-150).  Dr. Whitley was not provided any medical records from Jones and was unable to locate any other available records to assist him in his mental status examination.  (R. 146, 147).  Dr. Whitley concluded that Jones suffered from substance dependancy (prescription drug abuse), pain disorders associated with psychological and physiological factors, mood disorders due to a general medical condition, unresolved orthopedic[19] problems and hypertension, which was controlled by medication.  (R. 148).  Dr. Whitley further concluded that, although Jones' current ability to work was "diminished," he should be able to return to work once Jones' orthopedic problems were resolved.  (R. 149).

On December 30, 2003, Jones was evaluated by Donald Gibson, M.D. ("Dr. Gibson") for the Texas Rehabilitation Commission, Disability Determination Services.  (R. 151).  A physical examination revealed that Jones had tenderness in the lower lumbar spine, straight leg raising was negative, gait[20] and coordination were normal, there was no localized sensory loss, and there was no muscular weakness or atrophy.[21]  (R. 152).  After both laboratory testing and EKG readings, Dr. Gibson's final assessment was that Jones suffered from moderate back pain, with slight limitation of movement, stabilized hypertension, and stabilized sleep apnea.  (R. 153-155).  Dr. Gibson concluded that Jones' overall functional capacity was at a light level, and that Jones would be unable to lift

---

[19]  "Orthopedic" pertains to the correction of deformities of the musculoskeletal system.  *See* DORLAND'S, *supra,* at 1280.

[20]  "Gait" is the manner or style of walking.  *See* DORLAND'S, *supra,* at 721.

[21]  "Atrophy" is a wasting away; a diminution in the size of a cell, tissue, organ, or part.  *See* DORLAND'S, *supra*, at 170.

14

weights greater than fifty (50) pounds and also had difficulty maintaining stationary positions for more than an hour.  (R. 153).

A SSA Psychiatric Review Technique Form, completed on January 23, 2004, by Stephanie Judice, M.D. ("Dr. Judice") indicated that Jones suffered from substance addiction disorders, affective disorders,[22] and depression.  (R. 156, 159).  The report further indicated that a Residual Functional Capacity ("RFC") assessment was necessary and that Jones' functional limitations, in all categories, were only moderate or less.  (R. 156, 165A).

In accordance with the psychiatric review, on January 23, 2004, Mental and Physical RFC assessments were conducted.  (R. 166).  The Mental RFC report indicated that Jones's ability to understand and remember very short and simple instructions was only moderately limited, and that his ability to carry out detailed instructions was also moderately limited.  (R. 166).  Excluding these two limitations, Jones was not found to be significantly limited in any other way, and he was in no way found to be "markedly" limited.  (R. 166 - 169).  The Physical RFC report determined that Jones could occasionally lift and/or carry a maximum of fifty (50) pounds; frequently lift and/or carry a maximum of twenty-five (25) pounds; stand and/or walk for about six (6) hours in an eight (8) hour workday; sit for a total of about six (6) hours in an eight (8) hour workday; and that his push and/or pull abilities are unlimited, other than as shown for lift and/or carry.  (R. 171).  The report further indicated that, based on Jones' medical conditions, he could occasionally balance, stoop, kneel, crouch and crawl.  (R. 172).  The Physical RFC assessment ultimately concluded that although Jones' alleged medical conditions were partially supported by medical records and "other information," they were not entirely credible.  (R. 175).

---

[22] "Affective Disorder" is a mood disorder.  *See* DORLAND'S, *supra*, at 528.

On April 15, 2004, another Mental RFC was conducted in addition to another Psychiatric Review, by Henry M. Hanna, Ph.D ("Dr. Hanna"). (R. 178-195). The Mental RFC determined that in addition to the limitations set forth in the January 23, 2004, evaluation, Jones was also moderately limited in the following areas: the ability to understand and remember detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors', and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. 178-181). The Psychiatric Review made the same determinations as the evaluation on January 23, 2004, except that in addition to the disorders illustrated in the January review, it was also determined that Jones suffered from somatoform[23] disorder and a pain disorder. (R. 182, 188).

On September 23, 2004, Jones visited with Ahmed Sewielam, M.D. ("Dr. Sewielam") at the Clinic, and reportedly was anxious about his pain problem. (R. 206). Dr. Sewielam advised Jones about pursuing epidural[24] steroid injections, including the potential risks related with the procedure. (R. 206). An evaluation on January 25, 2005, at the Clinic, assessed that the medications appeared

---

[23] "Somatoform" is denoting physical symptoms that can not be attributed to organic disease and appear to be of psychic origin. *See* DORLAND'S, *supra*, at 1663.

[24] "Epidural" is situated upon or outside the dura mater; "dura mater" are the outermost, toughest, and most fibrous of the three membranes covering the brain and spinal cord. *See* DORLAND'S, *supra*, at 607, 550.

to be helping Jones' mood disorders and his pain.  (R. 197).  It further stated, however, that Jones was still suffering from depression and a lumbar disorder.  (R. 198).

On April, 21, 2005, Kendall Hamilton, M.D. ("Dr. Hamilton") sent a letter to Jones' attorney, stating that he had reviewed the medical records provided and had determined that  Jones suffered from both an orthopedic condition and degenerative disc disease.  (R. 241).  Dr. Hamilton noted that he believed Jones' pain level was "likely to be as severe as that found in a condition meeting listing 1.04(a)."  (R. 241).  He further stated that Dr. Gibson's evaluation included no mention of the October 6, 2003, MRI, and that he believed if Dr. Gibson had reviewed the MRI report, his opinions regarding Jones would have been different.  (R.241).

Frank Barnes, M.D. ("Dr. Barnes") evaluated Jones for the Texas Department of Assistive and Rehabilitative Services on June 6, 2005.  (R. 244).  Dr. Barnes diagnosed Jones with hypertension, sleep apnea, lumbar disc disease, and depression.  (R. 244).  Additionally, Dr. Barnes opined that Jones could likely physically function at the sedentary level of work.  (R. 244).  The findings regarding Jones' physical limitations were very similar to those found in the January 23, 2004 Physical RFC, differing only in the amount of weight Jones could lift and/or carry and push and/or pull.  (R. 245).  Specifically, the report determined that Jones could occasionally lift and/or carry a maximum of ten (10) pounds; frequently lift and/or carry a maximum of less than ten (10) pounds; stand and/or walk for at least two (2) hours in an eight (8) hour workday; sit for a total of about six (6) hours in an eight (8) hour workday; and that his push and/or pull abilities are limited in his upper extremities to about a ten (10) pound maximum.  (R. 246).  In regards to Jones' postural limitations, it was reported that Jones could occasionally climb ramps or stairs, kneel, crouch, crawl, or stoop, but could never claim ladders, ropes, or scaffolds or balance.  (R. 246).  On June 30, 2005, Dr. Barnes

17

took an x-ray of the lumbar spine and reported that Jones' pelvis was normal and that, although the spine was slightly straight, it was otherwise normal.  (R. 249).

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan*, 38 F.3d at 237; *accord Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The opinion of a specialist generally is accorded greater weight *than* that of a non-specialist.  *See Newton*, 209 F.3d at 455; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000).  Medical opinions are given deference, however, only if those opinions are shown to be more than conclusory and supported by clinical and laboratory findings.  *See Scott*, 770 F.2d at 485.

Moreover, a treating physician's opinions are far from conclusive and may be assigned little or no weight when good cause is shown.  *See Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237.  Good cause may permit an ALJ to discount the weight of a treating physician's opinion in favor of other experts when the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.  *See Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; *see also Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.  It is well settled that even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *See Paul*, 29 F.3d at 211; *accord Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 455.

In the case at bar, based on the objective medical facts and opinions of physicians, the ALJ's determinations that Jones' conditions did not "meet" a Listing were supported by substantial evidence. (R. 17). Specifically, the ALJ concluded that Jones' depression did not meet listing 12.04 and that his back impairment did not meet listing 1.04. (R. 17). Listing 1.04A includes:

> Disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or spinal cord. With: Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A. Jones' back impairment did not result in a significant limitation in range of motion, muscle weakness or sensory or reflex loss, as required by 1.04A. (R. 17). In the above summary of the medical records, a report by Dr. Vennix in 2002 indicated that "all motor units in the muscles examined were found to be normal in their morphology, amplitude, durations and recruitment." (R. 231). Additionally, in 2003, Dr. Heggeness indicated that Jones "was easily able to extend his leg to 90 degrees in a seated position" and further stated that Dr. Heggeness was not convinced that there was any nerve root compression. (R. 212).

In regards to Jones' affective disorders, in the absence of any evidence to support listing 12.04C, Jones must satisfy both 12.04A and 12.04B. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. The ALJ's decision concluded that Jones had not satisfied listing 12.04B (R. 17), which requires a showing that the depressive syndrome has resulted in at least two of the following:

1. Marked restriction of activities; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

19

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04B.  The Mental RFC report, in January 2004, concluded that Jones was not "markedly" limited in any of the activities listed under 12.04B.  (R. 166-168).  Additionally, although the April 2004 Mental RFC and Psychiatric Review differed slightly from the January assessment, the reports maintained that Jones was not "markedly" limited in any of the 12.04(B) activities.  (R. 178, 179, 182-194).

Jones argues that although his medical conditions may not *meet* the specific criteria of a listing, the ALJ offered no substantial evidence for her finding that his condition is not the medical *equivalent* of a listed impairment.  *See* Docket Entry No. 11, at p. 5.  Jones cites to Dr. Hamilton's opinion (R. 241) as evidence that his back condition is equivalent in severity to Listing 1.04A.  *See id.*  Medical equivalence is defined as:

(a)   An impairment that is at least equal in severity and duration to the criteria of any listed impairment.

(b)   Medical equivalence can be found in three ways:

   (1)(i) If you have an impairment that is described in appendix 1, but -

      (A)   You do not exhibit one or more of the necessary findings specified in the particular listing, or

      (B)   You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing.

   (ii)   We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

\* \* \*

(c)   When we determine if your impairment medically equals a listing, we will consider all evidence in your case record about your impairment(s) and it effects on you that is relevant to this finding.  We do not consider your vocational factors of age, education, and work experience.  We also consider

20

the opinion given by one or more medical or psychological consultants designated by the Commissioner.

*See* 20 C.F.R. § 404.1526. Under § 404.1526(b)(1)(i)(A)(ii), it must be shown that Jones had other "findings" that are of at least equal medical significance to the required criteria. *See id.*

The ALJ noted that she had carefully considered Dr. Hamilton's opinion; however, the ALJ discounted Dr. Hamilton's opinion because there was no other objective or otherwise credible evidence indicating that Jones is incapable of a range of sedentary work. (R. 18). Thus, contrary to Jones' contention, under SSR 96-6p, the ALJ was not required to consult a medical expert to determine medical equivalency. *See* SSR 96-6p, 1996 WL 374180, at *4 (S.S.A. July 2, 1996). "Medical equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. § 404.1526(b).

In the absence of objective medical record evidence to support Dr. Hamilton's opinion regarding equivalence, the ALJ based her medical equivalence determination on the opinions of non-examining physicians Drs. Hanna and Judice, who both opined Jones' condition to not be medically equivalent to a Listing and both signed Disability Determination and Transmittal forms. (R. 156, 182). The signature of a State Agency medical or psychological consultant on a Disability Determination and Transmittal Form ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. *See* SSR 96-6p, 1996 WL 374180, at *3; *see also Scheck v. Barnhart*, 357 F. 3d 697, 700 (7th Cir. 2004) (state agency physician's signature on Disability Determination and Transmittal form conclusively established that a physician designated by the Commissioner considered the issue of medical equivalence). Because the ALJ did not

21

determine that the MRI would disturb the State Agency medical consultant's findings, it was within the ALJ's discretion to not obtain an updated medical opinion from a medical expert. *See* SSR 96-6p, 1996 WL 374180, at * 4; *see also Brister v. Apfel*, 993 F. Supp. 574, 577-78 & n.2 (S.D. Tex. 1998).

The ALJ's conclusions were supported by substantial evidence. Listing 1.04A requires evidence of nerve root compression. By negating the characteristics of the compression, the ALJ correctly concluded that this essential element could not be satisfied. The only evidence of medical equivalence submitted by Jones was Dr. Hamilton's report, which can be considered, but absent supporting documentation, is in no way controlling upon the ALJ's ultimate determination. Furthermore, a mere showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment is insufficient. *See Zebley*, 493 U.S. at 531. Therefore, in the absence of any additional evidence to support Jones' argument for equivalence, the ALJ had substantial evidence to determine that Jones' back impairment neither met or medically equaled listing 1.04A. As to Jones' mental condition, the is devoid of evidence of marked limitations that could satisfy listing 12.04B; instead, the records reveal that Jones' limitations are only moderate or less. (R. 156, 165A). Consequently, the ALJ's determination that Jones' depression did not meet listing 12.04 is supported by substantial evidence.

## 2.  *Subjective Complaints*

The law requires the ALJ to make affirmative findings regarding claimant's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Sharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981)). When a claimant alleges disability resulting from pain, he must establish a medically determinable impairment that is capable of producing disabling pain. *See Ripley v. Charter*, 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. § 404.1529). Once a medical

22

impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *See id.*

It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Scott v. Shalala*, 30 F.3d 33, 35 n.2 (5th Cir. 1994); *Falco*, 27 F.3d at 164; *Wren*, 925 F.2d at 128. The Fifth Circuit recognizes that "the ALJ is best positioned" to make these determinations because of the opportunity to observe the claimant first-hand. *See Falco*, 27 F.3d at 164 & n.18. Moreover, "[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529; *Owens v. Heckler*, 770 F.2d 1276, 1281-82 (5th Cir. 1985)); *accord Chambliss*, 269 F.3d at 522 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)); *Hampton v. Bowen*, 785 F.2d 1308, 1309 (5th Cir. 1986).

As a matter of law, the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. *See Hames*, 707 F.2d at 166; *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *accord Brown v. Bowen*, 794 F.2d 703, 707 (D.C. Cir. 1986). Additionally, the mere existence of pain does not automatically bring a finding of disability. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989); *Owens*, 770 F.2d at 1281. It must be determined whether substantial evidence indicates an applicant can work despite being in pain or discomfort. *See Chambliss*, 269 F.3d at 522; *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163; *Wren*, 925 F.2d at 128. The decision arising from the ALJ's discretion to determine whether pain is

23

disabling is entitled to considerable deference.  *See Chambliss*, 269 F.3d at 522; *Wren*, 925 F.2d at 128; *James*, 793 F.2d at 706.  However, an ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record.  *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128).

At the administrative hearing, Jones testified regarding his complaints of pain.  (R. 257-282, 293-312).  The ALJ, however, determined that Jones' subjective complaints regarding his pain and functional limitations were not totally credible.  (R. 17).  The ALJ's decision indicates that she considered both objective and subjective indicators related to the severity of Jones' pain:

> The evidence of record documents very little current relevant treatment for this complaint.  If his symptoms were as debilitating as alleged, a reasonable person would have expected the claimant to seek treatment for his back pain on a more regular basis . . . .

> \* \* \*

> It would also be expected that more definitive symptoms such as disturbances in his gait and station, muscle weakness, or sensory deficits, would be detected during his clinical examinations.

> \* \* \*

> The evidence shows, however, that his clinical presentations have been far less restrictive than alleged by the claimant.

> \* \* \*

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

(R. 15, 16) (internal citations omitted).

24

Jones' December 2003 physical examination revealed negative straight leg raising, intact motor and sensory deficits, no tenderness in the lower lumbar spine, normal gait and coordination, no localized sensory loss, no muscular weakness, and no atrophy.  (R. 18, 152).  Jones' lab testing and EKG demonstrated a slight limitation of movement, but that his overall functional capacity was at a light level.  (R. 18, 153-155).  In June 2005, the consultative evaluation supported an overall functional capacity at the sedentary level.  (R. 18, 244).  As set forth above, the ALJ indicated that she had carefully considered Dr. Hamilton's opinion dated April 21, 2005, but had discounted it because there was no objective or otherwise credible evidence that Jones was incapable of sedentary work.  (R. 18).

Based on a review of the entire record, the Court does not doubt that Jones suffers from pain but, nonetheless, finds that the medical record does not support a finding that Jones' pain is constant, unremitting, and wholly unresponsive to therapeutic treatment.  *See Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163; *Wren*, 925 F.2d at 128.  Indeed, Jones testified that in the past two years he has only received three epidural shots for his back pain and has been treating his pain, primarily, with medications.  (R. 262, 263).  Jones also testified that he had tried physical therapy but that he felt it had actually worsened his condition and had subsequently ceased treatment.  (R. 304-305).

The ALJ is entitled to consider the credibility of the claimant and to weigh inconsistent evidence.  *See Chambliss*, 269 F.3d at 522; *Dunbar*, 330 F.3d at 672.  Here, there is substantial evidence to support the ALJ's finding that Jones' subjective reports of pain do not rise to the level of disability.  *See Ortiz v. Barnhart*, 70 Fed. Appx. 162, 164 (5th Cir. 2003); *Jones v. Barnhart*, 35 Fed. Appx. 390 (5th Cir. 2002).

### 3.   *Residual Functional Capacity*

Under the Act, a person is considered disabled:

> only if his physical or mental impairment or impairments are of such severity that his is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for his, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner bears the burden of proving that a claimant's functional capacity, age, education, and work experience allow her to perform work in the national economy. *See Brown v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 216; *Myers*, 238 F.3d at 619; *Greenspan*, 38 F.3d at 236.  If the Commissioner fulfills this burden by pointing out potential alternative employment, the claimant, in order to prevail, must prove that he cannot perform the alternate work suggested.  *See Masterson*, 309 F.3d at 272; *Boyd*, 239 F.3d at 705; *Shave*, 238 F.3d at 594; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

To determine whether a claimant can return to a former job, the claimant's "residual functional capacity" must be assessed.  *See Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990); *see also* 20 C.F.R. § 404.1545.  This term of art merely represents an individuals ability to perform activities despite the limitations imposed by an impairment.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); *see also* 20 C.F.R. § 404.1545.  Residual functional capacity combines a medical assessment with the descriptions by physicians, the claimant or others of any limitations on the claimant's ability to work.  *See Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *see also* 20 C.F.R. § 404.1545.  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience

26

must be considered in evaluating whether he is capable of performing any other work.  *See Boyd*, 239 F.3d at 705; 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as "[he] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *accord Carey*, 230 F.3d at 145; *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

In evaluating a claimant's residual functional capacity, the Fifth Circuit has looked to SSA rulings ("SSR").  *See Myers*, 238 F.3d at 620.  The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. *See id*.  In *Myers*, the Fifth Circuit relied on SSRs addressing residual functional capacity and exertional capacity.  *See id*.  In that case, the court explained:

> First, SSR 96-8p provides that a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.  The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . .  RFC involves both exertional and non-exertional factors.  Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately.  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . .  The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Id.* (internal citations omitted); *see* 61 Fed. Reg. 34474-01 (July 2, 1996).  The court further commented:

27

> Second, SSR 96-9p also provides that initially, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities. . . .  The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50.  Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.

*Id.* (internal citations omitted); *see* 61 Fed. Reg. 34478 (July 2, 1996).  The court also noted that SSR 96-9p defines "exertional capacity" as the aforementioned seven strength demands and requires that the individual's capacity to do them on a regular continuing basis be stated.  *See id.*  To determine that an claimant can do a given type of work, the ALJ must find that the claimant can meet the job's exertional requirements on a sustained basis.  *See Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir. 1983) (citing *Dubose v. Matthews*, 545 F.2d 975, 977-78 (5th Cir. 1977)).

In this case, the ALJ, relying on the record evidence and testimony from Jones and the VE, determined that Jones retained the residual functional capacity to perform sedentary work.  (R. 17).  The VE testified that upon her review of the record and Jones' testimony she believed that Jones would be unable to perform his past work as a bus driver, but that he would be able to engage in sedentary, semi-skilled and skilled work activity.  (R. 313-320).  The VE further testified that Jones' previous work history provided him clerical skills that could be transferred to other jobs, in the national community, such as a packager, assembler, or electronics worker.  (R. 314, 316).  Taking into consideration all of Jones' physical and mental limitations, the ALJ properly concluded that: Jones can lift/carry 10  pounds occasionally and less than 10 pounds frequently; can stand/walk for at least  2 hours in an 8-hour workday, and he can sit for about a total of 6 hours in an 8-hour workday; is limited to pushing/pulling a maximum of 10 pounds; can occasionally climb ramps or

stairs, but never ladders, ropes, or scaffolds; can occasionally perform work that requires kneeling, crouching, crawling, or stooping, but never kneeling; mentally, Jones retains the functional capacity to perform simple tasks with no complex instructions; functionally, Jones has moderate restrictions in his ability to perform activities of daily living, moderate difficulties in maintaining social functioning, mild restrictions in concentration, persistence, and pace, with no repeated episodes of decompensation of extended duration. (R. 17).

Jones' mental and physical RFC's, in January and April 2004, corroborate the ALJ's determination that Jones could perform sedentary work with the limitations the ALJ set forth. (R. 17, 166-169, 171, 172, 175, 178-181). The mental and physical RFC's conducted in January and April revealed that although Jones was moderately limited in several areas, he was not "markedly" limited in any area. (R. 166-169, 179-195). Additionally, the January report noted that Jones could sit for a total of about six (6) hours in an eight (8) hour workday and balance, stoop, kneel, crouch and crawl. (R. 172-173). In preparation for the supplemental hearing Dr. Barnes conducted another examination of Jones in June 2005. (R. 277, 243-249). This examination revealed that Jones could "probably" physically function at the sedentary level of work and also supported the ALJ's specific findings regarding Jones work-related abilities. (R. 243-249). Therefore, the ALJ's determinations regarding Jones' functional capacity were supported by substantial evidence.

III.    *__Conclusion__*

Accordingly, it is therefore

**ORDERED** that Jones' Motion for Summary Judgment (Docket Entry No. 11) is **DENIED**. It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Docket Entry No. 12) is **GRANTED**.  It is finally

**ORDERED** that the Commissioner's decision denying Jones disability benefits is **AFFIRMED.**

**SIGNED** at Houston, Texas on this 7th  day of July, 2008.

Calvin Botley
United States Magistrate Judge